Return Date: September 17, 2018
Time: 9:30 A.M.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
(CENTRAL ISLIP)
-----------------------------------------------------------x
In Re:

**CEZARY S. WYSOCKI,**

Debtor.
-----------------------------------------------------------x

Chapter 7

Case No. 1-18-74507 (REG)

**REPLY AFFIRMATION IN FURTHER SUPPORT OF MOTION TO VACATE THE AUTOMATIC STAY AND IN REPLY TO TRUSTEE'S OPPOSITION**

Robert L. Gordon an attorney admitted to practice law before this Court, affirms the truth of the following under penalties of perjury:

1. I am the attorney for 140-50 Burden Crescent Owners Corp., a creditor in the within action ("Creditor") and as such am fully familiar with the facts and circumstances of this matter. All of the relevant facts with references to same are more particularly set forth in the affidavit of Mark Novin, the managing agent for the Creditor, in the underlying motion and will not be herein repeated.

2. This Reply Affirmation is made in response to the Trustee's opposition with respect to Creditor's motion to vacate the stay to permit the foreclosure sale of shares of stock ("Stock") and proprietary lease appurtenant thereto ("Proprietary Lease") allocated to cooperative apartment 2E ("Apartment"), located at 140-50 Burden Crescent, Briarwood, New York 11435 ("Building"). The Trustee's opposition is replete with factual and legal errors which will be addressed in the order presented.

1

3. The Trustee, without introducing any affidavit from a qualified expert or an appraisal from a licensed appraiser, attempts to argue that the Apartment has a fair market value of approximately $120,000. In the absence of any documentary evidence, this allegation should be disregarded as unsubstantiated and of no probative value. That the Trustee potentially chooses to rely on the Debtor's petition and schedules to value the Apartment at $120,000 is not dispositive of the fair market value of this "asset" in the Debtor's estate. The Trustee has elected not to furnish an appraisal for the Apartment and cannot speak to the anticipated resale amount with any authority because, upon information and belief, the Trustee is not a licensed appraiser and has no expertise in this area.

4. The Trustee's supposition as to the existence of a successful bidder at an auction to be held is also not supported by the evidence submitted and should be disregarded as unsubstantiated and mere conjecture. The fallacy of this argument is that it confuses the existence of a retained auctioneer with that of purported prospective purchasers. The existence of the auctioneer itself does not prove the existence of prospective purchasers. Without venturing far into the philosophical implications of the Trustee's supposition, one might paraphrase this fantasy as "if you advertise, they will come."

5. Moreover, there is presently approximately $81,000 in debt between monies owed to the Debtor's lender and to the Creditor for rent and additional rent according to the Trustee. This sum is exclusive of all administrative expenses, accrued post-petition maintenance, additional maintenance, and loan expense, assuming an estimated date of cure 180 days from the date hereof. It is anticipated that total indebtedness to the Creditor will be approximately $100,000.

6. There is also no assurance that any prospective purchaser produced by the Trustee's auction will be acceptable to the Creditor, which has the right to approve all prospective applicants, and that this entire process will not be further delayed.

7.   The Trustee also assumes that the Apartment will sell for $120,000 or more. Distressed real estate sales often do not generate bids at the fair market value of asset being sold, because bidders expect to pay substantially less under such circumstances. Accordingly, in the absence of any firm bids solicited by the Trustee or the setting of a reserve price, there can be no adequate assurance of protection for the Creditor that the Trustee can obtain an adequate sales price at an auction, let alone a purchaser who can actually close title. Contrary to the Trustee's unsupported assertion, there may well be insufficient funds to pay all of the creditors and the relief sought by the Creditor is indeed warranted under the circumstances.

8.   There are no cases cited by the Trustee for the proposition that any purported "equity cushion" will suffice for the purposes of adequate protection..

9.   It is further respectfully submitted that the automatic stay should be vacated under Code § 362(d)(1) because the Creditor's interest in the Shares is not being adequately protected. Pursuant to Code §362(g), the Trustee has the burden of establishing that Creditor's interest is adequately protected. *In re Leonard*, 151 B.R. 639 (Bankr. N.D.N.Y. 1992); *In re Saint Peters School*, 16 B.R. 404 (Bankr. S.D.N.Y. 1982). Although the Code does not specifically define adequate protection, it is generally agreed that adequate protection means that "a secured creditor must be given reasonable assurance that the value of its secured interest in an item of property is, and will continue to be, protected by the debtor." *In Re Cooley*, 37 B.R. 590 (E.D. Pa. 1984). Thus, "a secured creditor has the right to receive adequate protection for any decline in value the collateral may suffer after the automatic stay is in effect, since, but for the stay, the creditor could foreclose to prevent or mitigate any loss in the value of the security". *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr. S.D.N.Y. 1982). Any proposed assignee must at a minimum demonstrate general financial

circumstances and ability to satisfy the obligations under the Proprietary Lease and any other obligations necessary to carry the Apartment. *See In re Brentano's, Inc.*, 29 B.R. 881 (Bankr. S.D.N.Y. 1983) (proposed assignee's good financial standing constituted adequate assurance of future performance). Although the Code does not specifically define adequate protection, it is generally agreed that adequate protection means that a secured creditor must be given reasonable assurance that the value of its secured interest in an item of property is, and will continue to be, protected. *In Re Lafayette Radio Electronics Corp.*, 9 B.R. 593, 598 (Bankr. E.D.N.Y. 1981).

9.     The legislative history of the adequate protection provisions of the Code indicates that adequate protection "*must* be provided to a creditor whose collateral is decreasing in value or is being consumed during the stay." S. Rep. No. 95-598, 95th Cong., 2nd Sess., p. 4, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5790 (emphasis added). Congress has recognized that adequate protection is required so that "[s]ecured creditors [are] not deprived of the benefit of their bargain." H.R. Rep. No. 95-595, 95th Cong., 2nd Sess., p. 339, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6295; *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

10.    The right of a cooperative corporation to seek relief from the automatic stay for lack of adequate protection under Code § 362(d)(1) was considered by the United States District Court, Southern District of New York, in the case of *In re 160 Bleecker Street Associates*, 156 B.R. 405 (S.D.N.Y. 1993). In *160 Bleecker Street*, the sponsor of a cooperative conversion filed a petition for relief under Chapter 11 of the Bankruptcy Code. The sponsor's default in its maintenance payments to the cooperative corporation had caused the cooperative corporation to default in its payments to the mortgagee holding the mortgage on the subject building. The Bankruptcy Court denied the cooperative corporation's motion to vacate the stay under Code §§ 362(d)(1) and (d)(2) upon the

grounds that, *inter alia*, although the Debtors had no equity in the apartments, the apartments were essential to the debtor's plan for reorganization. *Id.* at 410.

11. The United States District Court, Southern District, reversed the Bankruptcy Court Order and granted the cooperative corporation's motion for relief from the automatic bankruptcy stay pursuant to 11 U.S.C. §362 (d)(2), and under §§ 361 and 362(d)(1), because the cooperative corporation lacked adequate protection of its interest and because the sponsor had no equity in the apartments and the apartments were not necessary to an effective reorganization. In reaching its decision, the District Court noted that the Bankruptcy Court had not determined the value of the cooperative corporation's claim, the market value of the apartments, or the amount of interest, late charges and other charges due to cooperative corporation, that had accrued against the apartments. Further, the District Court aptly observed that:

> The huge debt owed by the debtor leaves the Cooperative without necessary funds to discharge its obligation to maintain the building. The stay prevents it from realizing funds through access to the collateral. The Cooperative's growing insolvency, which results from the stay, adversely affects its ability to maintain the building and in turn adversely affects the value of the apartments. . . . <u>As the apartments are the collateral, it is clear that the value of the collateral is being harmed by the stay</u>. (emphasis added) <u>Id</u>. 186 B.R. at 413.

12. The facts of the case at bar are similar if not more compelling than the facts in the *160 Bleecker Street* case. In *160 Bleecker Street*, the cooperative corporation argued that it was entitled to relief from the stay for "cause" because its interests in the apartments were not being adequately protected. The cooperative estimated that at the time of the Debtor's bankruptcy filing, its claim was $1.0 million and the value of the collateral was $1.6 million. Further, the cooperative argued that its claim continued to grow as the Debtor continued its default. On this basis, the cooperative argued

that the Debtor's bankruptcy and the resulting financial disarray of the cooperative corporation further contributed to a decline in the market value of the collateral. Hence, there was no "adequate protection" under the Bankruptcy Code.

13. It is well established law that an unexpired lease may be assumed only if at the time of the assumption, a debtor cures or provides adequate assurance of future performance. 11 U.S.C. § 365(b)(1). *See, e.g., In re Wills Motors, Inc.*, 133 B.R. 297 (S.D.N.Y. 1991); *In re Wingstead Corp.*, 116 B.R. 915 (S.D.N.Y. 1990). Adequate assurance that existing defaults would be cured requires non-speculative evidence sufficiently substantive to assure the non-debtor it will receive the amount of the default. The unsupported assertion that arreages will be paid is not sufficient where the debtor's finances are precarious. *In re Skylark Travel, Inc.* 120 B.R. 352 (S.D.N.Y. 1990); *see also In re Masterworks, Inc.*, 100 B.R. 149 (D. Conn. 1989); *In re World Skating Center, Inc.*, 100 B.R. 147 (D. Conn. 1989). In the present matter, the Trustee has made no showing sufficient to support a finding that any prospective purchaser will provide adequate protection.

14. The delay in waiting at a minimum of six months to sell the Apartment is highly prejudicial to the interest of the Creditor and is further unwarranted and impermissible for the reasons hereinabove stated. In liquidation cases under Chapter 7, Code § 365(d)(1) requires that the trustee assume within 60 days or the contract or lease is deemed rejected. However, this time may be extended by the court, for cause, for additional periods. However, upon information and belief, no motion was ever made by the Debtor or Trustee to extend the period of time to assume or assign the Stock and Proprietary Lease prior to September 3, 2018. Section 365(d)(1) is a potential trap for the debtor or trustee who fails to assume or assign timely. The purpose of this provision is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their

status vis-a-vis the estate". *See In re Shoppers Paradise, Inc.*, 7 B.C.D. 69 (Bankr. S.D.N.Y. 1980). Generally, rejection of an executory contract or unexpired lease constitutes a breach as of the date immediately preceding the date of the petition. Code § 365(g)(1). *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 457 U.S. 1057 (1986).

**WHEREFORE**, it is respectfully submitted that Creditor's motion to vacate the automatic stay be granted in its entirety, the Trustee's opposition thereto be denied in its entirety, together with such other and further relief to which this Court is just and proper.

Dated: September 15, 2018
      Palisades, New York

                                  Yours, etc.

                                  LAW OFFICE OF ROBERT L. GORDON
                                  Attorney for Creditor
                                  140-50 Burden Crescent Owners Corp.
                                  21 Swan Street
                                  Palisades, New York  10964
                                  (718) 267-9513

                              By:    S/Robert L. Gordon
                                      Robert L. Gordon ( RG3443)

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
)ss.:
COUNTY OF QUEENS )

SHIRLEY D. GORDON, being duly sworn deposes and says:

That I am over eighteen (18) years of age and reside at 21 Swan Street, Palisades, New York 10964

That on September 15, 2018, I served a true copy of the Reply Affirmation in Support of Motion to Vacate the Automatic Stay by mailing same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, by regular mail, addressed to the last known address of the addressee as indicated below:

TO:

Cezary S. Wysocki
50 Tree Road
Centerreach, New York 11720


Rachel Cowart
140-50 Burden Crescent
Unit 2E
Briarwood, New York 11435-2340

                                                          s/Shirley D. Gordon


Sworn to before me this
15th day of September, 2018
s/Robert L. Gordon
Qualified in Rockland County
NOTARY PUBLIC No. 31-4752370
Commission Expires June 29, 2019