Return Date: September 17, 2018
Time: 9:30 A.M.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
(CENTRAL ISLIP)
-------------------------------------------------------x

In Re:

                                         Chapter 7

**CEZARY S. WYSOCKI,**            Case No. 1-18-74507 (REG)

           Debtor.
-------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
VACATE THE AUTOMATIC STAY AND IN REPLY TO TRUSTEE'S OPPOSITION**



Of Counsel:
Robert L. Gordon - 3443

LAW OFFICE OF ROBERT L. GORDON
Attorney for Creditor
140-50 Burden Crescent Owners Corp.
21 Swan Street
Palisades, New York 10964
(718) 267-9513

I.

**PRELIMINARY STATEMENT**

This Reply Affirmation is made in response to the Trustee's opposition with respect to Creditor's motion to vacate the stay to permit the foreclosure sale of shares of stock ("Stock") and proprietary lease appurtenant thereto ("Proprietary Lease") allocated to cooperative apartment 2E ("Apartment"), located at 140-50 Burden Crescent, Briarwood, New York 11435 ("Building").

The first basis for denying the Trustee's objection to the instant motion is that the Trustee has not provided adequate assurance of protection of Creditor's interest with respect to any proposed purchaser.

The second basis for denying the Trustee's objection is that applicable state law as set forth in Article 8 of the Uniform Commercial Code and the Martin Act does not permit a transfer free of the Creditor's consent. Accordingly, all sales, assignments and transfers of the Stock and Proprietary Lease are subject to Creditor's consent as a matter of state law apart from the limitations contained in the Stock, By-laws and Proprietary Lease.

The third basis for denying the Trustee's objection is that the nature of the Debtor's interest in the Apartment is incapable of being sold without adversely affecting the property interests of the Creditor's shareholders. Therefore, the Stock and Proprietary Lease are indivisibly related and more closely resemble a personal service contract than a straight lease.

The fourth basis for denying the Trustee's objection is that the Trustee's time to assume the Proprietary Lease had run as of September 3, 2018, such that the Proprietary Lease was rejected by operation of law and there is no Proprietary Lease left to assume. Accordingly, this Court should not permit any sale whatsoever of the Stock and Proprietary Lease by the Trustee.

II.

## FACTS

The facts underlying this objection are set forth in the annexed Affirmation of Robert L. Gordon, Esq. ("Gordon Affirmation") and in the affidavit of Mark Novin, the managing agent for the Creditor, in the underlying motion and will not be herein repeated. The Court's attention is respectfully directed to said Affirmation.

III.

## ARGUMENT

A. **THE TRUSTEE HAS FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE PROPRIETARY LEASE**

1. The Trustee's Right To Sell Debtor's Property Is Not Absolute.

A trustee who wishes to assign a contract or lease under Code § 363(f) must meet two conditions: (1) the trustee must assume subject to the provisions in Code § 365 which will require the curing of defaults under Code § 365(b), if they exist; and (2) the trustee must give adequate assurance of future performance. Code § 365(f)(2). The latter requirement is to protect the lessor or party from the lease being assigned to an assignee who does not assume the contractual obligations or who is a poor financial risk. For an example of what might otherwise happen, see *Mohonk Realty Corp, v. Wise Shoe Stores, Inc.*, 111 F.2d 287 (2d Cir.), *cert. denied*, 311 U.S. 654 (1940) (assignee never became contractually bound).

2. The Trustee Has Failed To Provide Adequate Protection of Prompt Cure and Future Performance.

At the heart of the treatment of secured claims under the Code is the concept of "adequate protection". Section 362(d) requires that the stay be vacated for cause, including lack of "adequate protection" of the interest of the objecting party. Section 363(e) of the Code requires that the sale of property be conditioned or prohibited as is necessary to provide adequate protection. The court may exercise its equitable discretion (in determining what is adequate assurance) to protect the interests of both the debtor and the creditor and to further the underlying policy of the Code. *Queens Blvd. Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974). With respect to unexpired leases of a debtor, Code Section 365 provides, in pertinent part, as follows:

3

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

Thus, in the case at bar, in order for the Trustee to prove that he can successfully sell the Stock and Proprietary Lease, the Trustee must be able to demonstrate under Code §365(b)(1), that the Trustee can provide adequate assurance of prompt cure and adequate assurance of future performance under the Proprietary Lease.

In the instant matter, the Debtor filed a petition in bankruptcy on or about July 3, 2018. Since this time, neither the Debtor nor the Trustee has made any payments of post petition rent. After waiting three months since the debtor's filing of a petition in bankruptcy, the Trustee now first proposes to attempt to sell at a public auction scheduled to be held in November, 2018, the Stock and Proprietary Lease thereto appurtenant. No assurance has or can be been given by the Trustee that there will be a successful sale of the Stock and Proprietary Lease at the scheduled auction, or at any future time. Moreover, no assurance has been given that any proposed purchaser will be able to close title. There are no assurances that sufficient sales proceeds will be realized from the proposed auction to pay the creditors. Finally, the Trustee has not proffered any proof of a proposed purchaser's

wherewithal to Creditor. Therefore, the Trustee has not demonstrated that a prompt cure can be made at any time in the foreseeable future.

Even if the Interim Trustee is able to find a successful bidder, adequate assurance of future performance by a proposed assignee is required to be shown. The proposed assignee must at a minimum demonstrate general financial circumstances and ability to satisfy the obligations under the Proprietary Lease and any other obligations necessary to carry the Apartment. *See In re Brentano's, Inc.*, 29 B.R. 881 (Bankr. S.D.N.Y. 1983) (proposed assignee's good financial standing constituted adequate assurance of future performance). Although the Code does not specifically define adequate protection, it is generally agreed that adequate protection means that a secured creditor must be given reasonable assurance that the value of its secured interest in an item of property is, and will continue to be, protected. *In Re Lafayette Radio Electronics Corp.*, 9 B.R. 593, 598 (Bankr. E.D.N.Y. 1981).

The legislative history of the adequate protection provisions of the Code indicates that adequate protection "<u>must</u> be provided to a creditor whose collateral is decreasing in value or is being consumed during the stay." S. Rep. No. 95-598, 95th Cong., 2nd Sess., p. 4, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5790 (emphasis added). Congress has recognized that adequate protection is required so that "[s]ecured creditors [are] not deprived of the benefit of their bargain." H.R. Rep. No. 95-595, 95th Cong., 2nd Sess., p. 339, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6295; *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

2.   <u>The Trustee Has the Burden of Proving Adequate Assurance of Protection.</u>

Pursuant to Code §362(g), the Trustee has the burden of establishing that Creditor's interest is adequately protected. *In re Leonard*, 151 B.R. 639 (Bankr. N.D.N.Y. 1992); *In re Saint Peters School*, 16 B.R. 404 (Bankr. S.D.N.Y. 1982). Thus, "a secured creditor has the right to receive adequate protection for any decline in value the collateral may suffer after the automatic stay is in effect, since, but for the stay, the creditor could foreclose to prevent or mitigate any loss in the value of the security". *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr. S.D.N.Y. 1982).

Moreover, we call to the Court's attention that there is no provision made in the Trustee's objection for the disposition of the Stock and Proprietary Lease in the event that a sale cannot be effectuated. In light of the prolonged period in which in the Creditor has not and will not be receiving payment of post-petition maintenance and the lack of adequate assurance of future performance, we respectfully request that the Trustee's opposition to the instant motion be denied on the grounds that the Trustee has failed to provide adequate assurance of future performance and has not made any assurance of a prompt cure as required by the Code. *In re 160 Bleecker Street Associates*, 156 B.R. 405 (D.C. S.D.N.Y. 1993) (cooperative corporation obtained relief from the automatic stay for lack of adequate protection under Code § 362(d)(1)).

B.   **APPLICABLE NON-BANKRUPTCY LAW DOES NOT PERMIT A SALE FREE AND CLEAR OF THE CREDITOR'S INTERESTS UNDER CODE SECTION 365(F).**

1.   <u>Separate State Law Independent of the Contract or Lease Permits the Creditor to Withhold Consent to an Assignment or Sale.</u>

The out of the ordinary course of business sale of property subject to a lien was almost totally left to case development under the former Bankruptcy Act. The landmark case was *Van Huffel v. Harkelrode*, 284 U.S. 225 (1931), where the Supreme Court upheld the power of the bankruptcy

court to sell encumbered property with the liens attaching to the proceeds. This power has been expressly recognized in §363(f) which largely adopts the case law tests of creditor consent, the existence of an equity, or a bona fide dispute as to validity of the encumbrance. As a general rule, the trustee may not be prevented from assigning an executory contract or unexpired lease by non-bankruptcy law or terms of the contract or lease. Code § 365(f)(3). However, Code § 363(f)(1) provides that any sale is subject to applicable non-bankruptcy law permitting a sale free and clear of a creditor's interest in the property to be sold.

2.  **The Creditor Has A First Lien For Debtor's Obligations To Creditor And To Screen Prospective Purchasers Under Article 8 Of The Uniform Commercial Code.**

Uniform Commercial Code 8-103 provides that "A lien upon a security in favor of an issuer thereof is valid against a purchaser only if... the security is certificated and the right of the issuer to such lien is noted conspicuously thereon." The back of the Certificate for the Stock in the instant matter states in pertinent part:

> **"The rights of any holder of the shares evidenced by this certificate are subject to the provisions of the certificate of incorporation and by-laws of the corporation and to all the terms, covenants, conditions, and provisions of a certain proprietary lease made by and between the corporation, as Lessor, and the person in whose name this certificate is issued, as Lessee, for an apartment in the apartment house which is owned by the corporation and operated as a 'co-operative', which proprietary lease limits and restricts the title and rights of any transferee of this certificate.**
>
> **The shares represented by this certificate are transferable only as an entirety and only to an assignee of such proprietary lease approved in writing in accordance with the provisions of the proprietary lease. The directors of this Corporation may refuse to consent to the transfer of the shares represented by this certificate until any indebtedness of the shareholder to the Corporation is paid.**

...." (emphasis added)

In *ALH Properties Ten, Inc. v. 306-100th Street Owners Corp.*, 86 N.Y.2d 643, 635 N.Y.S.2d 161 (1995), the Court of Appeals for the State of New York held that an apartment corporation had an issuer's lien for maintenance obligations arising Article 8-103 of New York State Uniform Commercial Code ("UCC") because the legend on the reverse side of the stock certificate complied with the UCC provisions. 635 N.Y.S.2d at 163. The Court's reasoning would extend the issuer's lien under the UCC for any provisions specifically enumerated on the stock certificate. In the present matter before this Court, two limitations are clearly spelled out on the reverse side of the Certificate. The first limitation is that all sales are subject to the consent of the Creditor. "The shares represented by this certificate are transferable only as an entirety and only to an approved assignee of such proprietary lease." The second limitation is for the cure of any and all shareholder indebtedness to the Creditor prior to the transfer:

> "The directors of this Corporation may refuse to consent to the transfer of the shares represented by this certificate until any indebtedness of the shareholder to the Corporation is paid. The Corporation by the terms of said By-laws and proprietary lease has a first lien on the shares represented by this certificate for all sums due and to become due under the proprietary lease."

Because Article 8-103 of the UCC independently provides for an issuer's lien where the certificate states that any transfer of stock is subject to the creditor's consent to any proposed sale and cure of outstanding indebtedness, the Interim Trustee cannot transfer the Stock and Proprietary Lease appurtenant thereto without obtaining the Creditor's consent and curing all maintenance arrears.

I hasten to point out to this Court that I do not believe or argue that the presence of the restrictions themselves compel the granting of the relief requested. The insertion of those very

restrictions into the Stock, By-Laws, and Proprietary Lease in compliance with independent state law requirements satisfies the objective conditions set out in the Uniform Commercial Code and Martin Act and the regulations thereunder promulgated.

3. <u>Part 18 of the Regulations Promulgated under General Business Law Section 352-eee Establishes Creditor's Consent as a Prerequisite to Any Transfer of Stock and Proprietary Lease.</u>

The Martin Act as codified at New York General Business Law § 352-eee ("GBL") requires disclosure of all of the material terms by offerors of cooperative securities offerings as set forth in a plan of cooperative ownership. Once submitted for filing, an offering plan is an instrument binding upon the offeror, as well as the operative cooperative and establishes the terms and conditions of the offering, which cannot be varied without a duly filed amendment accepted for filing by the Department of Law of the State of New York. 13 NYCRR Part 18.3(a)(12) (1991) ("Regulations"). As such, GBL § 352-eee and the Regulations promulgated thereunder recognize the formation of cooperative entities which may refuse to consent to an assignment as a valid power of the corporation without more. In particular, the Regulations at Part 18.3(u)(1) requires an offeror to state any "restrictions on the shareholders' right to . . . sell, lease or pledge the shares and proprietary lease." In the present matter, the By-laws and Proprietary Lease comply with the Regulations and contain restrictions upon resale without the Creditor's consent. In this respect, the present matter is similar to *In re Claremont Acquisition Corp.*, 186 B.R. 977 (C.D. CA 1995), in which the Court held that a state statute could restrict transfer of auto dealership, where the condition of transfer was premised upon manufacturer's consent which could not be unreasonably withheld.

In contrast to the reasonableness standard discussed in the *Claremont* case, under the Business Judgment Rule, the actions of the Cooperative's Board of Directors in New York are not

reviewable by a court under a reasonableness test, except under very limited circumstances not involved in this matter, where the Board of Directors of the Creditors is acting in the best interests of the shareholders in their business judgment. *Levandusky v. One Fifth Avenue Apt. Corp.*, 75 N.Y.2d 530, 554 N.Y.S.2d 807 (1990). Accordingly, independent grounds exist to bar the sale of the Stock and Proprietary Lease free of the Creditor's liens under applicable state law governing the sales of securities.

C.  **THE STOCK AND PROPRIETARY LEASE MAY NOT BE SOLD WITHOUT ADVERSELY AFFECTING THE PROPERTY INTERESTS OF THE CREDITOR AND ITS SHAREHOLDERS.**

1.  Personal Service Contracts May Not Be Assumed or Assigned

Subsections (c) and (e) of Code § 365 should be considered together. The former precludes assumption or assignment of certain types of contracts, while the latter permits their termination. The trustee may not assume or assign a contract lease if non-bankruptcy law excuses the other party from accepting substituted performance (unless the other party consents to the assumption of assignment). Code § 365(c)(1)(A) provides:

> The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if--
> ... applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties....

The prohibition applies only when the excuse from performance is independent of any restrictive words in the contract or lease and often relates to so-called "personal service contracts." An example would be an employment contract. Case law determines whether franchise agreements, licenses, and other agreements are covered. *See In re Wills Motors, Inc.*, 133 B.R. 303 (Bankr. S.D.N.Y. 1991), *aff'd, SAAB Cars USA, Inc. v. Wills Motors, Inc.*, 134 B.R. 124 (D.C. 1991); *In re Luce Industries, Inc.*, 14 B.R. 529 (D.C. S.D.N.Y. 1981)(assignment of license not permitted to new manufacturer who would not follow prior practices); *In re Bronx-Westchester Mack Corp.*, 20 B.R. 139 (S.D.N.Y. 1982); and *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir. 1984) (§ 365(c) applies generally to contracts that are not assignable under non-bankruptcy law). No cases were discovered involving

the sale of cooperative stock and leases and this is a matter of first impression to the best of our awareness.

Where state law excuses non-debtor from accepting personal services from another party, such a contract or lease is not assignable without the permission of the other party. *In re Cardinal Indus., Inc.*, 116 B.R. 964 (S.D. Ohio 1990) (limited partners were not required to accept performance from general partner's assignee). Personal service agreements are not property of the estate and can neither be assumed nor rejected. *In re Carrere*, 64 B.R. 156 (C.D. Cal. 1986). The purpose of § 363(c) is to prevent a debtor or trustee from forcing a non-debtor part), to accept performance from, or to provide performance to, someone other than the party with whom it contracted in situations when the identity and abilities of the party are central to the obligation. *Matter of Midway Airlines, Inc.*, 6 F.3d 492 (7th Cir. 1993) (citations omitted). The key question before this Court is whether the sale of stock and lease allocated to a cooperative apartment is something more than the assignment of a plain lease with no other interests involved.

Recently, the Court in *In re Magness*, 972 F.2d 689, 27 C.B.C.2d 862 (6th Cir. 1992), held that a membership in a private golf club is not assignable by a trustee because the property interest of third party club members cannot be properly protected. In the present action, the Debtor's interest more closely resembles membership in an exclusive club than that of a straight leaseholder because more than one bundle of rights and obligations is involved. The Debtor's Certificate itself is the indicia of title to shares of Stock in the Creditor, which in turn, permits the Debtor's right to occupy and use cooperative space held in fee by the Creditor. *Matter of State Tax Commn. v. Shor*, 43 N.Y.2d 151, 157-58, 400 N.Y.S.2d 805, 807-08 (1977); *Silverman v. Alcoa Plaza Associates*, 37 A.D.2d 166, 323 N.Y.S.2d 39 (1st dept. 1971). To the same extent the Debtor's entree into the

Creditor's cooperative is similar to an applicant's membership to a country or golf club. Once that member is approved by an admissions committee, the payment of dues entitles the holder of the membership to certain rights enjoyed in common with the other members, including the right to exclude others (within permissible legal limits not involving invidious discrimination), who are not perceived as being compatible. Accordingly, the component of rights and obligations of ownership in a cooperative involving the property interests of third parties precludes assumption or assignment of the Stock by the Interim Trustee. This distinction is also recognized in *In re Claremont Acquisition Corp.*, 186 B.R. 977 (C.D. CA 1995) (state statute could restrict transfer of auto dealership where condition of transfer was premised upon manufacturer's consent which could not be unreasonably withheld).

The element of the Creditor's right to limit association in a valuable membership, which is so much a part of cooperative ownership, necessitates that the property interests of third persons be protected by this Court, and that the Creditor have the right to terminate the Stock and Proprietary lease in accordance with § 365(e)(1) and (2).

3. <u>Contracts Are Not Severable</u>

While debtors and trustees have the right to assume and assign, they have not been given the power to rewrite contracts at will. *Atlantic Computer Systems, Inc. v. Pieco, Inc.*, 1994 U.S. Dist. LEXIS 11448 (S.D.N.Y. 1994). Under § 365 of the Code, a debtor may not "cherry pick" pieces of contracts it wishes to assume. (citations omitted). Thus, executory contracts and unexpired leases may not be assumed in part and rejected in part. *In re New York Trap Rock Corp.*, 137 B.R. 568 (S.D.N.Y. 1992); *In re S.E. Nichols, Inc.*, 120 B.R. 745 (S.D.N.Y. 1990). Likewise, the cure power should not be used to expand rights under a contract. *Good Hope Refineries, Inc. v. Benavides*, 602

F.2d 998 (1st Cir.), *cert. denied*, 444 U.S. 992 (1979). Therefore, in the present matter, the Trustee cannot successfully argue that the Stock and Proprietary Lease are separate interests because they are inextricably tied together and one may not be sold or assigned without the other.

D.     THE TRUSTEE'S TIME TO ASSIGN THE LEASE HAS ALREADY RUN.

1.     Time Limits Under The Bankruptcy Code.

In liquidation cases under Chapter 7, Code 365(d)(1) requires that the trustee assume within 60 days or the contract or lease is deemed rejected. However, this time may be extended by the court, for cause, for additional periods. However, upon information and belief, no motion was ever made by the Debtor or Trustee to extend the period of time to assume or assign the Stock and Proprietary Lease prior to September 3, 2018. Section 365(d)(1) is a potential trap for the debtor or trustee who fails to assume or assign timely. The purpose of this provision is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate". *See In re Shoppers Paradise, Inc.*, 7 B.C.D. 69 (Bankr. S.D.N.Y. 1980).

2.     Effect of Rejection

Generally, rejection of an executory contract or unexpired lease constitutes a breach as of the date immediately preceding the date of the petition. Code § 365(g)(1). *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 457 U.S. 1057 (1986).

As set forth in the Gordon Affirmation, the Creditor's lien against the Stock is being continually eroded by the continually increasing amounts of maintenance arrears, interest charges, legal fees and other charges due from the Debtor which are continuing.

Thus, as in *160 Bleecker Street*, where the District Court concluded that the value of the apartments as collateral was being harmed by the stay, it cannot be disputed that, the value of the Stock as collateral for Creditor's secured lien is being continually diminished as a result of the Bankruptcy Stay and Creditor's interest in the Stock is not being adequately protected, and is being harmed by the Stay. Indeed, while the Debtors in *160 Bleecker Street* filed a plan of reorganization (a plan that the District Court found was "woefully inadequate", 156 B.R. at 411), in the instant case, it is almost three months since the Debtor's filing of its petition for relief, and no relief is imminent. Based on the foregoing and the other reasons set forth in this Memorandum of Law it is improper to require Creditor to suffer further impairment of its interest in the Stock during any continuation of the stay. *In re 160 Bleecker Street Associates*, 156 B.R. 405 (D.C. S.D.N.Y. 1993); *In re Saint Peters School*, 16 B.R. 404 (Bankr. S.D.N.Y. 1982); *In re Terra Mar Associates*, 3 B.R. 462 (Bankr. D. Conn 1980). Accordingly, Creditor is entitled to an Order vacating the automatic stay under Code § 362(d)(1), for "cause", including the lack of adequate protection of Creditor's interest in the Stock.

**WHEREFORE**, I request that this Court grant Creditor's request to vacate the automatic stay, deny the Trustee's objection to the instant motion, and grant such other and further relief as to the Court may seem just and proper.

Dated: September 15, 2018
      Palisades, New York

                              Yours, etc.

                              LAW OFFICE OF ROBERT L. GORDON
                              Attorney for Creditor
                              140-50 Burden Crescent Owners Corp.
                              21 Swan Street
                              Palisades, New York  10964
                              (718) 267-9513

By:     S/Robert L. Gordon
           Robert L. Gordon ( RG3443)

## AFFIDAVIT OF SERVICE

**STATE OF NEW YORK** )
)ss.:
**COUNTY OF QUEENS** )

SHIRLEY D. GORDON, being duly sworn deposes and says:

That I am over eighteen (18) years of age and reside at 21 Swan Street, Palisades, New York 10964

That on September 15, 2018, I served a true copy of the Reply Memorandum in Support of Motion to Vacate the Automatic Stay by mailing same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, by regular mail, addressed to the last known address of the addressee as indicated below:

TO:

Cezary S. Wysocki
50 Tree Road
Centerreach, New York 11720

Rachel Cowart
140-50 Burden Crescent
Unit 2E
Briarwood, New York 11435-2340

            s/Shirley D. Gordon

Sworn to before me this
15th day of September, 2018
s/Robert L. Gordon
Qualified in Rockland County
NOTARY PUBLIC No. 31-4752370
Commission Expires June 29, 2019